IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE LAMONT CROMWELL,   )
         )
      Plaintiff   )
         )
   vs.      )    Civil Action No. 08-1048
         )    Judge Joy Flowers Conti/
MICHAEL MANFREDI, Officer of South  )    Chief Magistrate Judge Amy Reynolds Hay
Strabane Police Department, South  )
Strabane Township, Washington, PA; CARL)
MARTIN, Officer of City of Washington  )
Police Department, Washington County, PA;)
JOHN C. PETTIT, former Washington  )
County District Attorney, Washington, PA;  )
PATRICK LEARY, State Police Officer of  )
Washington County PA State Police  )
Barracks, Washington, PA;  KENNETH  )
WESTCOTT, Then Mayor of City of  )
Washington Pennsylvania; CITY OF  )
WASHINGTON PENNSYLVANIA;  )
STATE POLICE DEPARTMENT OF  )
WASHINGTON COUNTY  )
PENNSYLVANIA;  CITY OF  )
WASHINGTON POLICE DEPARTMENT  )
Washington County Pennsylvania;  )
         )
      Defendants   )    Re: Dkt. Nos. [39], [46] & [79]

AMENDED REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the Defendants' Motions to Dismiss be granted and it

is further recommended that, pursuant to the screening provisions of the PLRA, 28 U.S.C. §§

1915(e) and 1915A, all claims against all Defendants be dismissed.

II.    Report

A.      Relevant Factual and Procedural History

Andre Lamont Cromwell ("Plaintiff"), having a record of criminal convictions dating back

to 1989,[1] and having previously filed civil rights lawsuits,[2] has filed another civil rights action.  In

this case, Plaintiff has currently sued eight defendants.[3]   Plaintiff's claim is based on an incident

occurring in November 2006, when two police officers, namely Defendants Michael Manfredi and

Carl Martin, who, acting as members of the Washington County Drug Task Force, attempted to

stop Plaintiff.  Plaintiff sped off in a car, hitting one of the police officers, i.e., Officer Manfredi.

Defendant Martin, seeing the car coming at the officers, shot at Plaintiff while Plaintiff was in the

car, attempting to leave.  Plaintiff was eventually caught by others some distance away and

arrested.  Although he had been charged with aggravated assault for this incident, he eventually

pleaded guilty to only two counts of Recklessly Endangering Another Person ("REAP").   Plaintiff

---

[1]  See, e.g., Commonwealth v. Andre Cromwell, CP-02-CR-0010548-1989 (Allegheny County
C.P.)(the offense date was 6/8/1989; Plaintiff was only 18 years old at the time, his birthday being
August 10, 1970).   Plaintiff has multiple convictions in both Washington County and Allegheny County.
Apparently, Plaintiff also has convictions in West Virginia, as he is currently incarcerated in a West
Virginia State prison for Attempting to Commit Manufacture/Delivery of Controlled Substance).  See

  http://www.wvdoc.com/wvdoc/OffenderSearch/tabid/117/Default.aspx

(Site last visited 8/7/2009).

[2]  See, e.g., Cromwell v. Neal, 2:99-cv-521 (W.D. Pa. Filed 4/5/1999); Cromwell v. Emery,
2:99-cv-522 (W.D. Pa. Filed 4/5/1999); and Cromwell v. Manfredi, 2:99-cv-00627 (W.D. Pa. Filed
4/23/1999).  The Court discovered these cases in the course of performing its three strike analysis for
purposes of determining Plaintiff's eligibility for IFP status.

[3]  Plaintiff originally filed his civil rights complaint against twelve defendants, Dkt. [7], but was
granted leave to withdraw the claims against four of those defendants, Dkt. [69].  Consequently, there are
only eight defendants remaining: Officers Manfredi and Martin; John C. Petit, the then District Attorney
of Washington County; State Trooper Patrick Leary; the Pennsylvania State Police; Kenneth Wescott, the
then Mayor of the City of Washington, Pennsylvania; the City of Washington; and finally, the City of
Washington Police Department.

now alleges that the Defendants engaged in excessive force and maliciously prosecuted him.  He further claims that the employers of the police officers failed to train them.  Lastly, he complains that the Pennsylvania State Police who investigated the incident, failed to perform a thorough investigation.

The operative complaint in this case is the amended complaint filed on October 6, 2008. Dkt. [16].[4]   The Defendants have moved against the operative complaint as follows.

State Trooper Patrick Leary and the Pennsylvania State Police ("PSP") filed a motion to dismiss, Dkt. [39], and a brief in support, Dkt. [40].  Thereafter, Defendant Manfredi filed a motion to dismiss, Dkt. [46], and a brief and an affidavit in support, Dkt. [50][5] and [48]. Plaintiff filed a response to the motion to dismiss filed by Defendants Leary and the PSP.  Dkt. [66].  He included in that response a copy of his preliminary hearing transcript from the state court for the charges of aggravated assault and REAP.  Plaintiff also filed a response to Defendant Manfredi's motion to dismiss.  Dkt. [67].  Plaintiff also filed an amended document, Dkt. [70], that was an opinion from a state court judge filed July 1, 1999, that granted Plaintiff's motion to suppress in a criminal case that occurred long prior to the events giving rise to the instant case. That state court opinion found that there was a violation, apparently under Pennsylvania's Constitution's analogue to the United States Constitution's Fourth Amendment and suppressed

---

[4]  It appears that Plaintiff also filed an amended complaint on November 12, 2008, Dkt. [19], which is identical to that filed at Dkt. [16] save for the date of signature and the inclusion of a certificate of service.  Since there is no substantive difference, we deem the amended complaint first filed, i.e., Dkt. [16], to be the operative complaint.

[5]  In fact, the original brief filed in support of the motion to dismiss was docketed at Dkt. [47], however, that was a brief actually from another case, and so, Dkt. [50] was filed, essentially as a substitute for Dkt. [47].

drugs that Plaintiff threw away during this prior encounter with Officer Manfredi.  Dkt. [70] at 5

to 6.   The relevance of the opinion was not made clear by Plaintiff.  He apparently offers it as

some indication that Officer Manfredi has a history of allegedly violating Plaintiff's rights.

Plaintiff also filed another "amended document," Dkt. [78], which was merely additional

argument and citation to case law in support of his position opposing the grant of the motions to

dismiss.  In the meantime, the Court had ordered the parties to produce the transcript of Plaintiff's

guilty plea hearing on the REAP charges, Dkt. [71], and they did so.  Dkt. [77].

Defendant Martin filed a motion to dismiss, Dkt. [79], and a brief in support, Dkt. [80],

which merely incorporated Defendant Manfredi's Brief in support of his motion to dismiss and

the brief filed in support of Defendants Leary's and PSP's motion to dismiss.[6]  Plaintiff filed a

response to Defendant Martin's motion.  Dkt. [83].

B.    Applicable Legal Standards

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550

U.S. 544  (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570

(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

(1957)).   Under this standard, the Court must, as a general rule, accept as true all factual

allegations of the complaint and all reasonable inferences must be viewed in the light most

---

[6]  Counsel for Defendant Martin actually stated that he (counsel) was incorporating into his brief in support of the motion to dismiss the document filed at Dkt. [47], which was the incorrectly filed brief in support of Defendant Manfredi's motion to dismiss.  Dkt. [80] at 1 ("Defendant, Martin, hereby incorporates by reference the Brief in Support of Motion to Dismiss previously filed by Michael Manfredi and Patrick Leary and identified as document **47**, and document 40, respectively on the docket.")(emphasis added).  We presume that counsel meant to incorporate Dkt. [50], i.e., Manfredi's brief and will proceed under that presumption.

favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001).  Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 554 (quoting Papasan v. Allain, 478 U.S.  265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Twombly, 550 U.S. at 555-556.  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can

be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In addition, because Plaintiff was a prisoner at the time of the filing of this civil action,[7] and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein. In addition, because he is proceeding in forma pauperis, the screening provisions of 28 U.S.C. § 1915(e) apply. The Court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the Court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

C.    Discussion

To state a claim for relief under section 1983, a plaintiff must sufficiently allege that (1) persons took actions under color of state law and (2) as a result of those actions, Plaintiff was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine

---

[7] See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  Nicini v. Morra,

212 F.3d 798, 806 (3d Cir. 2000) (en banc).

The operative complaint presented Section 1983 claims under the Fourth, Sixth,[8] Eighth

and Eleventh Amendments.  Dkt. [16] at 7, ¶ III.

### 1.    Eleventh Amendment

The Eleventh Amendment claims should be dismissed.  Section 1983 creates a cause of

action for a violation of federal constitutional rights and statutory rights.  The Eleventh

Amendment provides: "The Judicial power of the United States shall not be construed to extend

to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens

of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment

confers no private rights to citizens enforceable under Section 1983, it simply bars suits against

the states in federal court.   Hence, the complaint cannot state a cause of action under the Eleventh

Amendment.

### 2.    Eighth Amendment

Similarly, the complaint fails to state a claim under the Eighth Amendment.  At the time of

the encounter with the two police officers on November 8, 2006, and in the capacity with which

the Defendants dealt with Plaintiff, Plaintiff was a free citizen and not in jail and so the Eighth

Amendment has no applicability.  See, e.g.,  Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000)

("the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims

---

[8]  The Sixth Amendment claims were subsequently withdrawn and, hence, are no longer at issue.
See Dkt. [16] at 12, ¶ 11 (claim against Public Defender's Office); Dkt. [68] (motion to withdraw claims
against inter alia, the Public Defender's Office); and Dkt. [69] (order granting Dkt. [68], i.e., the motion
to withdraw claims).

brought by convicted criminals serving their sentences" and not to arrestees); Clark v. Condon, CIV.A. 01-654, 2002 WL 31102741, at *3 (D.Del. Sept. 20, 2002)("The Eighth Amendment protections against cruel and unusual punishment do not apply until after conviction and sentence. Graham, 490 U.S. at 392 n. 6. Since the alleged excessive force occurred during plaintiff's arrest, there is no Eighth Amendment claim applicable here.")(internal quotations omitted). Accordingly, the Eighth Amendment claims must be dismissed.

### 3.    Fourth Amendment

One of Plaintiff's Fourth Amendment claims is that some of the Defendants engaged in the constitutional tort of malicious prosecution.  Laufgas v. Patterson, 206 F.App'x. 196, 198 (3d Cir. 2006)(setting forth elements of a malicious prosecution claim pursuant to Section 1983, and referencing Fourth Amendment as source of protection against malicious prosecution).[9] Although not entirely clear from his complaint, it appears that Plaintiff complains that his Fourth Amendment rights were violated because he was maliciously prosecuted at least by Defendant Petit and possibly by Defendants Martin and Manfredi.  Dkt. [16] at 10, ¶ 2 (Defendant "Petit maliciously prosecuted Plaintiff . . ."); Dkt. [67] at 17 to 23.

---

[9]  The plurality decision in Albright v. Oliver, 510 U.S. 266, 267-70 (1994) held that there is no cause of action under substantive due process for malicious prosecution, as the claim is specifically covered under the Fourth Amendment.  Even though Albright was a plurality decision, the Courts of Appeals have likewise held that there is no substantive due process claim for malicious prosecution and that such a constitutional tort is more properly brought under the Fourth Amendment.  See Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998); Gordon v. City of Philadelphia, 40 F.App'x 729, 730 (3d Cir. 2002) (unpublished) ("after the Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), it is beyond argument that a claim of malicious prosecution under § 1983 cannot be based on substantive due process considerations. Instead, it must be based on a provision of the Bill of Rights providing 'an explicit textual source of constitutional protection.' 510 U.S. at 272. Moreover, we have recognized that after Albright a § 1983 malicious prosecution claim cannot be grounded in substantive due process.  Nonetheless, acknowledging that Albright held open the possibility of bringing a 1983 malicious prosecution claim under the Fourth Amendment, we have held that a § 1983 malicious prosecution claim can be based on the Fourth Amendment . . . .")(some citations omitted).

However, to establish a malicious prosecution claim, Plaintiff must allege in his complaint that  (1) the defendant initiated a criminal proceeding; (2) which ends in plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant acted maliciously or for a purpose other than bringing the defendant to justice.  Rose v. Bartle, 871 F.2d 331, 349  (3d Cir. 1989).  Instantly, Plaintiff himself admits that the proceedings initiated by Defendants Manfredi and Martin did not terminate in favor of Plaintiff.  Instead, Plaintiff admits that he pled guilty to the two counts of REAP.  See Dkt. [67] at 17 to 23.  The Court also takes judicial notice of the criminal dockets of Washington County Court of Common Pleas, which likewise establish that Plaintiff pleaded guilty to two counts of REAP based on the actions he took on November 8, 2006.[10]   Thus, as a matter of law, Plaintiff's claim of malicious prosecution must fail.

Although Plaintiff does not explicitly argue such, he appears to suggest that the proceedings terminated in his favor because there were numerous other charges brought against him, namely several counts of aggravated assault which were dropped and he only pled guilty to the two counts of REAP. Dkt. [67] at 21 to 22.  However, such a compromise by the prosecutor obtained in a guilty plea does not satisfy the "favorable termination" requirement of a malicious prosecution claim.  Aliakbarkhananfjeh v. Schramm, 194 F.3d 1311 (Table), 1999 WL 801590, at *2  (6th Cir. 1999) ("A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious

_____

[10]  Commonwealth v. Andre Cromwell, No. CP-63-CR-0002244-2006 (Washington C.C.P.), available at

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=200431262

(Site last visited 8/10/2009).

prosecution if  (a) The charge is withdrawn or the prosecution abandoned pursuant to an

agreement of compromise with the accused ...")(quoting Restatement (Second) of Torts § 660(a));

Hilfirty v. Shipman, 91 F.3d 573, 580 (3d Cir. 1996)(same), *disapproved of on other grounds by*,

Merkle v. Upper Dublin School Dist., 211 F.3d 782 (3rd Cir. 2000).  Instantly, although some of

the charges were terminated, they were terminated pursuant to a plea agreement with the accused,

hence, Plaintiff cannot, as a matter of law, establish a necessary element of his malicious

prosecution claim.[11]  Accordingly, the malicious prosecution claim must be dismissed against all

of the Defendants for failing to state a claim upon which relief can be granted.

        Next, we take up Plaintiff's Fourth Amendment excessive force claims.  There appear to

be at least two and possibly three claims of the use of excessive force.  The first claim is that

Manfredi and Martin engaged in excessive force when they first drew their guns after Plaintiff

allegedly refused to comply with police orders.  The second claim is that Officer Martin engaged

in excessive force when he shot at Plaintiff as Plaintiff drove off in the car with officers Martin

and Manfredi in front of or in close proximity to the side of the car.  The possible third claim is

that Officer Manfredi failed to prevent the use of excessive force.

        We begin with first principles.  The Fourth Amendment provides that
         The right of the people to be secure in their persons, houses, papers, and effects,
        against unreasonable searches and seizures, shall not be violated, and no Warrants
        shall issue, but upon probable cause, supported by Oath or affirmation, and
        particularly describing the place to be searched, and the persons or things to be
        seized.

U.S. Const. Amend. IV.  We are here concerned only with the issue of whether Petitioner was

---

[11] This reasoning applies equally to all of the defendants and so, to the extent that Plaintiff asserts
all of the defendants engaged in a malicious prosecution, Plaintiff fails to state a claim upon which relief
can be granted.

seized with excessive force by Officers Manfredi and Martin, as it is undisputed that no search of Plaintiff was conducted by the Officers.  We find the case of California v. Hodari D., 499 U.S. 621 (1991) to be dispositive of all of Plaintiff's potential Fourth Amendment excessive force claims.  The facts of Hodari D., may be briefly summarized as follows:  A group of youths, including Hodari D., fled at the approach of an unmarked police car on an Oakland, California street.  Officer Pertoso, who was wearing a jacket with "Police" embossed on its front, left the car to give chase.  Pertoso did not follow Hodari directly, but took a circuitous route that brought the two face to face on a parallel street.  Hodari, however, was looking behind as he ran and did not turn to see Pertoso until the officer was almost upon him, whereupon Hodari tossed away a small item.  Pertoso tackled him, and the police recovered the item, which proved to be crack cocaine. In the juvenile proceeding against Hodari, the court denied his motion to suppress the evidence relating to the cocaine.  The State Court of Appeal reversed, holding that Hodari had been "seized" when he saw Pertoso running towards him; that this seizure was "unreasonable" under the Fourth Amendment, the State having conceded that Pertoso did not have the "reasonable suspicion" required to justify stopping Hodari; and therefore that the evidence of cocaine had to be suppressed as the fruit of the illegal seizure.  The United States Supreme Court, however, held that a seizure for Fourth Amendment purposes did not occur under the facts of the case and stated a more general rule defining seizures as occurring only when there has been some actual physical touching of the intended arrestee/detainee or when there has been both a show of authority and actual submission to that show of authority by the arrestee/detainee.

The Supreme Court in Hodari D., explained:

Hodari was untouched by Officer Pertoso at the time he discarded the cocaine. His

11

defense relies instead upon the proposition that a seizure occurs "when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968) (emphasis added). Hodari contends (and we accept as true for purposes of this decision) that Pertoso's pursuit qualified as a "show of authority" calling upon Hodari to halt. The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.

> The language of the Fourth Amendment, of course, cannot sustain respondent's contention. The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure. Nor can the result respondent wishes to achieve be produced-indirectly, as it were-by suggesting that Pertoso's uncomplied-with show of authority was a common-law arrest, and then appealing to the principle that all common-law arrests are seizures. An arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority.

> "Mere words will not constitute an arrest, while, on the other hand, no actual, physical touching is essential. The apparent inconsistency in the two parts of this statement is explained by the fact that an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest. There can be no arrest without either touching or submission." Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 206 (1940) (footnotes omitted).

> We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest, as respondent urges. Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are not obeyed. Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.

Hodari D., 499 U.S. at 625 - 27 (footnotes omitted).  Here, the complaint never alleges that

Plaintiff's person was ever physically touched by the officers.  In fact, the complaint alleges that

the officers approached Plaintiff as he sat alone in his car and that Plaintiff pulled off prior to them being able to physically control Plaintiff.  Dkt. [16] at 9 ("the defendants . . . encountered Plaintiff as he set [sic] alone in his vehicle, restricted plaintiff's liberty of movement at gunpoint then used deadly force on plaintiff by firing a shot at plaintiff as he simply attempted to terminate the defendants['] encounter by pulling away slowly.").[12]  Moreover, the complaint clearly infers that  Plaintiff never submitted to any of the shows of authority by the two officers.  Hence, there is absolutely no seizure of Plaintiff for Fourth Amendment purposes.  See, e.g., United States v. Williams, 205 F.App'x 97, 101 (3d Cir. 2006)("'More recently, the Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority.' Id. at 352 (citing California v. Hodari D., 499 U.S. 621, 626-28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) and Curley v. Klem, 298 F.3d 271, 279 (3d Cir.2002)). 'Attempted seizures of a person are beyond the scope of the Fourth Amendment.' United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 n. 7, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)) (internal quotation marks omitted)").[13]

_____

[12]  Although not necessary to the disposition of this case, the Court notes that the transcript of the Plaintiff's preliminary hearing indicates that the two officers never physically contacted Plaintiff and that Plaintiff never submitted to their orders.  In fact, it appears that Plaintiff contends that they did not give him any order at least not prior to their drawing their weapons.  Dkt. [66] at 9, ¶ ¶ L-M.

[13]  We note that the law of the Commonwealth of Pennsylvania under its Constitution's analogue to the Fourth Amendment is to the contrary.  Commonwealth v. Matos, 672 A.2d 769 (Pa. 1996)(mere chasing by police constitutes a seizure). To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a claim that the officers violated the State Constitution, the Court recommends denying the exercise of such supplemental jurisdiction in light of the recommendation to dismiss all federal law claims.  See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting Borough of West Mifflin v. Lancaster, 45

One may ask, what of the actual shooting of the gun. We find the case of <u>Cole v. Bone</u>, 993 F.2d 1328 (8th Cir. 1993) to be dispositive of any putative claim that the mere firing of the gun constituted a seizure in violation of the Fourth Amendment.  In <u>Cole</u>, the officers fired a gun at a fleeing individual.  The gunfire did not initially strike the individual, though it did strike the vehicle.  Eventually, the police did shoot the fleeing suspect.  In <u>Cole</u>, in the course of analyzing whether the was a Fourth Amendment seizure accomplished by the mere firing of the gun which firing did not hit the suspect, the Court held that there was not a seizure, holding that

> Likewise, the shots that were fired at the truck and that did not hit Cole were not seizures because they too failed to produce a stop. Nor did the unsuccessful rolling roadblock and stationary roadblock constitute seizures. To constitute a seizure, a roadblock must have been meant to stop the citizen and it must actually succeed in stopping him. <u>Brower</u>, 489 U.S. at 599, 109 S.Ct. at 1382. In short, all of these actions constituted assertions of authority by the officers, but they were not seizures under the Fourth Amendment because Cole did not submit to any of them, nor did any succeed in stopping him.").

---

F.3d 780, 788 (3d Cir. 1995)). <u>See</u> <u>also</u> 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...."  Here, the appropriate considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding matters of state law.

Cole, 993 F.2d at 1333.[14]  We agree with Cole.[15]  Accordingly, because the complaint reveals that

there was no Fourth Amendment seizure of Plaintiff by Officers Manfredi and Martin, Plaintiff

cannot state a Fourth Amendment claim.  Hence, Plaintiff's Fourth Amendment claims must be

dismissed for failure to state a claim upon which relief can be granted.

    In the alternative, even if some Court would find, contrary to all of the foregoing, that a

seizure existed for Fourth Amendment purposes, we find that Defendants Martin and Manfredi are

entitled to qualified immunity as to the excessive force claims against them since, assuming there

was a constitutional violation, it would not be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The

allegations of the instant complaint, especially concerning Plaintiff's apparent disregard of the

Officers' orders to stop and not to get into the car and not to start the car, and then his starting of

---

[14]  We note that the Court of Appeals in Abraham v. Raso, 183 F.3d 279 (3d Cir.1999) disagreed
with another holding of Cole; "we want to express our disagreement with those courts which have held
that analysis of 'reasonableness' under the Fourth Amendment requires excluding any evidence of events
preceding the actual 'seizure.' See, e.g., Cole v. Bone, 993 F.2d 1328, 1333 (8th Cir.1993)('we scrutinize
only the seizure itself, not the events leading to the seizure')").  This disagreement by Raso, however,
does nothing to the holding of Cole on which we rely, i.e., that absent a physical contact with the person
of the intended arrestee, there is no Fourth Amendment seizure.  Moreover, in Raso, the arrestee there
was in fact ultimately shot and, hence, seized.  Raso simply states that one must consider all of the
circumstances to determine the reasonableness of a seizure including events leading up to the seizure.
Here, because there was never a seizure by the Defendants, there was no Fourth Amendment violation.
Raso does not hold that merely shooting a gun at an individual constitutes a seizure.

[15]  Plaintiff's citation to the case of United States v. Strickler, 490 F.2d 378 (9th Cir. 1974) for the
putative quote that "once Strickler's liberty of movement was restricted at gunpoint a seizure had
occurred" is unpersuasive for several reasons.  Dkt. [66] at 9, ¶ N.   First, that exact quote or even
something very similar does not appear to be in that case.  The closest quote this Court could find is "The
restriction of Strickler's 'liberty of movement' was complete when he was encircled by police and
confronted with official orders made at gunpoint."  Id., at 380.  The Court finds the reasoning of the
Strickler inconsistent with Hodari D., and, thus, overruled to that extent.  Even if not irreconcilable, the
Strickler case is distinguishable on its facts from the instant case.  In Strickler, the arrestee, while in a
car, was successfully surrounded by police cars, which prevented Strickler's car's escape and it could be
said that Strickler submitted to the police show of authority.  Here, Plaintiff clearly did not submit and in
fact escaped without physical force ever being applied to him.

the car with the officers in close proximity thereof, considered in light of the caselaw of <u>Hodari D.</u>, and <u>Cole v. Bone</u> and Fourth Amendment law more generally, demonstrate that Defendants Martin and Manfredi are entitled to good faith immunity because it would not have been clear to a reasonable officer in their shoes that their conduct was unlawful in the situation they confronted. <u>Id.</u>

    5.  <u>Failure to Train</u>[16]

   Plaintiff makes repeated allegations against many of the Defendants that they failed to properly train Defendants Manfredi and Martin.  Dkt. [16] at 11, ¶ 5 (Mayor Wescott); <u>id.</u>, at 12, ¶ 7 (City of Washington), <u>id.</u>, at ¶ 8 (PSP failed to properly train Defendant Trooper Leary); <u>id.</u>, at ¶ 10 (City of Washington Police Department).

   However, given that we are recommending dismissal of all of his federal constitutional claims for failing to state a claim upon which relief can be granted, it follows that the failure to train claims must likewise dismissed.  The general rule is that in the absence of a constitutional violation caused by the failure to train, the mere fact of failing to train states no cause of action under Section 1983.  <u>See</u>, <u>e.g.</u>,  <u>See</u>, <u>e.g.</u>, <u>Nail v. J.C. Gutierrez</u>, __ F.App'x __, __, 2009 WL 2240922, at *3 (7th Cir. 2009)("Finally, Nail contends that he should have prevailed on his claim

---

  [16]  Defendants Leary and the PSP and, consequently, Defendant Martin by incorporation, argue in this case that "a supervisor has 'no affirmative duty to train, supervise or discipline so as to prevent' unconstitutional conduct."  Dkt [40] at 6 (quoting <u>Brown v. Grabosski</u>, 922 F.2d 1097, 1120 (3d Cir. 1990).   Defendants cite to <u>Brown</u> as if it held that a supervisor has no affirmative duty to train, supervise or discipline; <u>Brown</u> did not hold such.  In <u>Brown</u>, the court was addressing a qualified immunity defense for actions taken in 1985 and the <u>Brown</u> court concluded that, at that time, i.e., 1985, the law was not clearly established that supervisors had an affirmative obligation.  <u>See</u>, <u>e.g.</u>, <u>Rosenberg v. Vangelo</u>, 93 F.App'x 373, 379 (3d Cir. 2004).  However, at the time <u>Brown</u> was decided, i.e., in 1990, an affirmative obligation on supervisors to train, supervise and discipline was clearly established.  <u>Id.</u> Accordingly, Defendants' reliance on <u>Brown</u> is misplaced and the failure to train, supervise or discipline **may** constitute sufficient personal participation to state a claim.  <u>See</u>, <u>e.g.</u>, <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001)(listing conditions required to impose supervisory liability).

for failure to train because the officers admitted in interrogatories that they had not been instructed on how to respond to 911 hang-ups. But the point is irrelevant: as the district court correctly concluded, in the absence of a Fourth Amendment violation, Nail's claim about the police department's training program necessarily fails."); Blakeslee v. Clinton County, __ F.App'x __, __, 2009 WL 2023554, at *2 (3d Cir. 2009)("To sustain a claim based on a failure to train theory, 'the identified deficiency in the training program must be closely related to the ultimate constitutional injury,' and the plaintiff must 'prove that the deficiency in training actually caused the constitutional violation, i.e., the police custodian's indifference to her medical needs.'"); Sandefer v. City of Quinlan, No. Civ.A. 3:00-CV-1956, 2001 WL 984895, at *6 (N.D. Tex., Aug. 14, 2001)("Without deprivation of a federally protected right, an essential element of element of [sic] municipal liability is missing.  Even if a certain municipal policy were found to be unconstitutional, a plaintiff suffering no constitutional harm cannot prevail.  As this Court has already determined that Officer McLain had probable cause for Sandefer's arrest and that he did not engage in the use of excessive force, Sandefer's allegations of constitutional violations have been undermined.  The Court need not reach the question of whether or not the City of Quinlan failed to instruct, supervise, control and discipline Officer McLain in his duties as a police officer and therefore, must grant summary judgment to the City of Quinlan regarding Sandefer's § 1983 claims.") (citations omitted).   Where there is no constitutional injury, there can be no liability for failure to train because such failure to train cannot be said to have caused any constitutional injury.  Accordingly, the failure to train claims must be dismissed for failure to state a claim upon which relief can be granted.

6.    Conspiracy Claims

17

Lastly, we take up Plaintiff's conspiracy claims.  As explained by the Court of Appeals: "[i]n order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a **federally protected** right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999)(emphasis added). Accord Eskridge v. Hawkins, Civ.A. No. 05-2352, 2006 WL 2303014, at *7 (E.D.Pa. 2006)(" To establish a conspiracy claim under § 1983 , 'a plaintiff must prove that persons acting under the color of state law conspired to deprive him of a federally protected right.'")  A conspiracy to violate state rights of an individual is insufficient to state a Section 1983 claim.

The rule is that absent a showing of an underlying violation of a federal right, no cause of action for conspiracy under Section 1983 can be established.  As succinctly explained by one Court:

> "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." Dixon 898 F.2d at 1449 n. 6. . . .
> "'Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises....' " Andree, 818 F.2d at 1311 (quoting Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982)) . . . .
> "While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983." Defeo, 810 F.Supp. at 658;. . . .
> "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.' " Hale v. Townley, 45 F.3d 914, 920 (5th Cir.1995) (citation omitted). . . .  This is because the "gist of the cause of action is the deprivation and not the conspiracy." Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n. 2 (7th Cir. 1975). . . .

Holt Cargo Systems, Inc. v. Delaware River Port Authority, 20 F.Supp.2d 803, 843 (E.D.Pa.

1998).

Here, because we have already determined that the Plaintiff has failed to establish the violation of any of his federal rights, he cannot, *a fortiori*, establish a civil conspiracy under Section 1983 because such requires the commission of an underlying federal civil rights violation, which Plaintiff has failed to establish.  In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 789 (3d Cir. 1999)("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.  Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.")(internal citations and quotations omitted); Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy [i.e., the agreement] is not independently actionable").  Hence, Plaintiff's claims of conspiracy should be dismissed for failure to state a claim.

>       7.    Claims against Particular Parties

In the alternative, particular parties should be dismissed because the complaint fails to state a claim against them.

The PSP point out that they are entitled to Eleventh Amendment immunity from suit.  The

PSP are correct.  The PSP constitute an agency of the Commonwealth of Pennsylvania and so are entitled to Eleventh Amendment immunity.  See, e.g., Doe v. Evanko, NO. CIV. A. 00-5660, 2001 WL 283170, at *2 (E.D. Pa. March 22, 2001); Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 108 F.Supp.2d 460, 465 (E.D. Pa. 2000)(finding that Pennsylvania State Police-Bureau Control Enforcement, as part of the Pennsylvania State Police and an agency of the Commonwealth, is an alter ego of the State for purposes of the Eleventh Amendment); Durham v. United States, 9 F.Supp.2d 503, 506 (M.D. Pa. 1998).  As such, the PSP are immune from suit in federal court, and thus, the PSP must be dismissed as a defendant from this suit.

All claims against the City of Washington Police Department must be dismissed because it lacks capacity to be sued. "Capacity" refers to a party's ability to sue and be sued in federal court. Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994), judgment rev'd on other grounds, 79 F.3d 452 (5th Cir. 1996) (defining "capacity" with respect to federal courts);  Ward v. Baldwin Lima Hamilton Corp., C. A. No. 84-0232, 1985 WL 2830, at *1 (E.D. Pa., Sept. 30, 1985) ("'Capacity' refers to the ability of an entity to be brought into, or to use, the courts of a forum."). The Washington City Police Department has no corporate identity separate and apart from the City of Washington and therefore lacks the capacity to be sued.  Johnson v. City of Erie, 834 F.Supp. 873 (W.D. Pa. 1993).  The Johnson Court noted that the "numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not." Id. at 879.  Plaintiff has not provided any argument as to why this holding in  Johnson is inapplicable here nor does the Court perceive any reason that the holding of Johnson would be inapplicable.  As such, it appears

that the City of Washington  Police Department should be dismissed as a party defendant.  See,

e.g., Potts v. Crosby Independent School Dist. 210 F.App'x 342 (5th Cir. 2006)(affirming

dismissal of Sheriff's department as party defendant for lack of capacity to be sued).

III.    Conclusion

     For the above stated reasons, the district court should grant the Defendants' motions to

dismiss and should dismiss all claims against all Defendants.

     In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local

Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in

accordance with the schedule established in the docket entry reflecting the filing of this Report

and Recommendation.  Failure to timely file objections may constitute waiver of any appellate

rights.


                              Respectfully submitted,

                              /s/ Amy Reynolds Hay
                              Chief United States Magistrate Judge

Dated: 19 August, 2009


cc:     The Honorable Joy Flowers Conti
        United States District Judge


        Andre Lamont Cromwell
        47917-1
        Stevens Correctional Center
        795 Virginia Avenue
        Welch, WV 24801


        All counsel of record by Notice of Electronic Filing